The third case, 25-2087, Southern Iowa, Iowans for Alternatives to Smoking and Tobacco et al. v. Mary Mosiman Mr. Valencia Good morning, Your Honors. May it please the Court? Plaintiffs, a group of retailers and consumers who sell or use federally unauthorized and thus illegal vapor products, sued to enjoin Defendant Mary Mosiman's enforcement of Iowa's law, H.F. 2677, which regulates in-state sales of vapor products. Plaintiffs sought a facial injunction against H.F. 2677 in its entirety. The District Court determined there were constitutional applications of the law, and ordinarily, that would have been the end of the analysis. The facial injunction would fail. But here, the District Court relieved plaintiffs of their burden under the facial injunction analysis. It narrowed plaintiffs' relief and granted them the facial injunction of only part of the law. And worse, the District Court did so under a novel theory. Even though Congress has expressly saved and preempted under the TCA any state law that relates to sales of tobacco products, the District Court determined that Iowa's law was obstacles and purposes preempted because it incorporated in part the FDCA. And in the District Court's words, it was thus impermissibly parasitic on the FDCA. This Court should vacate that injunction for any of three reasons. First, plaintiffs lack standing because their asserted interest in continuing to use or sell federally illegal products is not one that this Court can protect. Second, the TCA expressly preserves and saves state laws like this one that relate to in-state sales of tobacco products. And third, the District Court failed to consider any preliminary injunction factor. We're governed today by Edina. That's correct, Your Honor. Which carefully parses out the three different kinds of clauses we are. So don't do what the briefs do and just glide by the differences. That's correct, Your Honor. I think this is exactly right that we are governed by City of Edina and that's where I'd like to start. So City of Edina tells us, first of all, we're here under an implied preemption analysis. And what we need to consider in implied preemption is what the purpose of Congress is. And here, we can look to City of Edina for that because this Court has already told us. And so turning to this section, you're here only under the disfavored implied preemption doctrine? That's correct, Your Honor. Plaintiffs on appeal for the first time raised express preemption. But if you look at their briefing and you look at their amended complaint, which is RDoC 27, they raise only implied preemption. And they actually expressly disavowed the import of Section 387P to this case. They say that that clause didn't matter in the district court. So, yes, we are here. They say what? They expressly disavowed an express preemption claim in the district court. So, yes, we are here only under an implied preemption claim. And even in implied preemption, we still look to the purpose of Congress as viewed through the text of the statute. And that's where I'd like to start, Your Honor. As you mentioned, this Court has City of Edina. We believe City of Edina is the beginning and the end of the analysis here. The difference in City of Edina is factual but not under the legal principles. In City of Edina, plaintiffs challenged a city ordinance that sought to ban sales of flavor products. Plaintiffs there argued that the flavor product part of the statute impermissibly tried to tell manufacturers what to do with their tobacco products. Under 387P, the preemption clause, plaintiffs argued that that tried to dictate a tobacco product standard. Here, what plaintiffs are arguing and what our law might touch on is pre-market review and registration, which is also within the preemption clause. But what plaintiffs in City of Edina got wrong and what this Court applied in City of Edina is you have to go to that third clause, which is the savings clause. And the savings clause uses what this Court knows is very broad language relating to the savings clause says that the preemption clause does not apply to state or local laws that relate to sales of tobacco products. So that's what you have in City of Edina, because even though it arguably touched on tobacco product standards by banning flavors, it is still a ban on sales. Here is the same thing for Iowa's law, HF2677. There can be no liability under Iowa's law unless the product is sold in Iowa. It is a sales ban for certain types of products. And in that case, in that way, we are just like City of Edina. So this Court should apply City of Edina, apply the savings clause, and determine that Iowa's law, which relates to sales of tobacco products, is saved under 387P, savings clause. What the district court got wrong is that it applied Section 347A as if 337A overrode and negated any effect of the savings clause under 387P. That was novel, and it's wrong. Let me ask you, is there anything that's not saved from the preemption clause? It's just that they almost seem to offset each other. Your Honor, I think this is an argument that the plaintiffs in City of Edina also raised, and the Court addressed that concern. It's sort of a slippery slope argument I think you're getting at of, well, then can't the state couch any law as a sales law and ban sales and then put everything else in it? The answer is yes, the state can, because Congress told us. And I think if we step back and take a 30,000-foot view of the tobacco products world, we'll understand why. Before 2009, the FDA did not have authority from Congress to regulate tobacco. So in 2009, it enacted the TCA, the Tobacco Control Act, to give the federal government some authority. But what it did there was different than what it did in a lot of other FDCA realms. In the TCA world, it started from this robust block of state and local authority, primacy and regulating tobacco. And the language this Court used in, I think, City of Edina, but it might be the 9th Circuit County of Los Angeles, it carved out federal power. So you have a narrow swath of expressed federal power. So to understand what federal government can do, you look to 387P or 387J here, which is where the premarket review requirements are. But then right there in that same statute, it says any law, any state law that relates to sales is not part of the preemption clause. So that is broad. I take your point. This Court had no issue with that in City of Edina. And another reason why it had no issue is it said, even if it's a plausible reading that a law falls within the preemption clause, but it's a plausible reading that it relates to sales of tobacco products, we are here beginning from the presumption against preemption. Because in City of Edina, this Court said, this is a historic police power. States had the historic role regulating tobacco products before 2009 and still since 2009, except for this narrow swath of federal power that has been carved out. And so that's why we think that City of Edina applies here. Looking to Buckman, though, and why Buckman was the improper case to apply in Section 337A, the district court, for the first time for a federal court, applied Section 337A to a state tobacco sales regulation. That was novel. Since then, you have several federal district courts that have been analyzing materially similar state vapor directory laws. All but one have found that Buckman and 337A don't control because we look to the more specific statute, the later in time statute, and the one that directly talks about what's at issue here, and that's 387P. A state law relating to sales of tobacco products. And if we look to Buckman, the district court said it wasn't extending Buckman beyond its terms. It was just applying the principles of Buckman. But Buckman itself actually did not even consider a state law that incorporated FDCA standards. Buckman was a private plaintiff seeking to use general state tort law to police a fraud against the FDA. The U.S. Supreme Court in Buckman said that it was concerned that a private plaintiff was trying to do what the FDA can do for itself. And there, the Supreme Court was concerned that liability under that general state law tort claim arose, quote, solely by virtue of the fraud against the FDA. So I would say even if you think Buckman might apply here, even if you try to apply Section 337A as overriding 387P, we're still not preempted because our law, any liability under our law, does not arise solely by virtue of any federal violation. And to understand that, you don't need to look any further than the hypothetical we gave you in our brief, because here we're operating under a facial injunction, and we just need to point out one constitutional application. And if you take... You're talking so fast. I'm sorry, Your Honor. Nobody could possibly take notes. I mean, I don't have a recorder. I'm sorry, Your Honor. I will slow down. What I was mentioning was that even if you apply Section 337A here, which says that only the federal government may enforce the FDCA, Buckman interpreted that statute to say 337A preempts statutes, preempts state law claims where liability arises solely by virtue of the federal violation. So if you apply that test here, we don't violate it. Iowa's law has several independent state law requirements separate from any reliance on the FDCA or the TCA. You can consider a product, product A, I'll say, that is FDA authorized, and then you have a product B that is FDA unauthorized. That information alone doesn't tell us anything about whether there is state law liability. You need to know more because Iowa's law has more requirements. And that is exactly why our law does not, liability under our law does not arise solely by virtue of the FDCA. That's why 337A, even if it does apply here, doesn't find our law should be preempted. And that's why applying Buckman here would be novel and improper, we believe. Counsel, what's your view of the relevance of California v. Zook from the U.S. Supreme Court? Yes, I think California v. Zook, we don't have to get there because the argument there is that what you get from California v. Zook is that a state can adopt federal law as its own and there's no implied or conflict preemption. A state can regulate the same conduct. So if we get down the chain of logic here and we get to a point where you decide that our law, all it does is just adopt the FDCA and there are no independent state law requirements, well, we still don't lose because we have California v. Zook, we have Wyeth v. Levine, and I think the Zyla case from the Fifth Circuit recently interprets those cases well in the FDCA context and tells us there's no implied or conflict preemption when a state adopts a federal standard as its own. We don't think you need to get there because our law is different than the FDCA. We apply additional requirements. What are some of those additional requirements? Certainly, Your Honor. So one is that the district court itself even found was an independent state law requirement. That's the agent for service of process requirement, which is in 453A.52d. The district court there understood that that was an independent state law requirement, but what it said was that's ancillary. But there's no ancillary test here. The question is, is that a constitutional application? Is that an independent state law requirement? And it is. But there's also more. There's an annual certification requirement. Manufacturers must certify that they're going to abide by our law each year. There's an independent fee required. So there's several independent state law requirements. The district court just looked at one where we say if you are FDA authorized, then that's one sort of check in your box. But that's not enough in and of itself. So the state can just tack on some rather procedural requirements and that's significant? So under 387P, so long as the law relates to sales of tobacco products, yes. The state can regulate in the tobacco world. That's what this court said in the city of Edina, and that's what Congress has told us. 337A and Buckman tell us that if liability arises solely by virtue of the federal violation, that's an issue. But an in-state sales requirement would mean that the liability doesn't arise solely by virtue of that. Let's talk about a couple other points. You're touching on what bothers me about this case and interpreting the Edina opinion. It is clear, I think, from the legislative history and common sense, that Iowa has set out to duplicate FDA regulation of smoking products because it believes that the FDA isn't doing its job properly. That, to me, is expressly what Section 337 Congress intended to prevent. So we can take all of these details and spin them out any way we want. This law fundamentally over-regulates, frankly. I'm all for having to annually register with 49 states. Oh, well, it's not. It's just a procedural thing. The heck it is. I spent my litigation career dealing with these kinds of, well, they're deadly to producers who can't afford them, and they're deadly to consumers who can. Understood, Your Honor. What I was doing here is above and beyond what the TCA does, and that's what's allowed under the savings clause. No, I'm talking about what the TCA was intended to do and the way I, therefore, would read it. Your Honor, what the TCA, when we look to the text of the statute, it tells us, states are allowed to enact laws that relate to sales of tobacco products. That can mean anything. I agree, Your Honor, because relating to is very broad, and so it's a very broad savings clause. It has to be narrow, depending on context. I think depending on context, you're correct. If we look at the preemption clause, what the preemption clause says is that states can, the only thing that's preempted are regulations that are different from or in addition to. So if your point here is that Iowa is doing exactly what the TCA does, then it's not preempted under the preemption clause. 387P tells us what is preempted in the tobacco world, and it's right there in the text that if you adopt the state law or the TCA as your own, it's not within the preemption clause. I'd like to reserve the remainder of my time for rebuttal. So the attempt of Congress to prevent duplicative regulation necessarily fails? So long as what the state is doing merely duplicates what the feds are doing? No, Your Honor. So how many bureaucracies can we therefore feed at the expense of consumers? Your Honor, I think the historical background of this area of the law tells us that states and local authorities have historical primacy, and that's why we have a very broad savings clause. Section 337 was enacted. Understood, Your Honor. And you're urging us to blink and look the other way based on vague language in a later amendment. You have a powerful argument, but I think it falls on an anti-regulator's deaf ears, frankly. Understood, Your Honor. And with that point, I'll just finish with the California v. Zook and the Zila case from the Fifth Circuit, that even if we are adopting federal law as our own, there is no implied preemption, there's no conflict when a state adopts federal law as its own. Thank you, Your Honor. Mr. Fraser? May it please the Court. I'm going to just respond to arguments made by opposing counsel this morning. Opposing counsel repeatedly said that Buckman says that there's only a 337 issue if the claim exists solely by virtue of the FDCA. That's true that that's in the language of Buckman, but Buckman, in the next paragraph, the Court says, the existence of these federal enactments is a critical element in the state law claims, and that is why the state's statute is preempted here. If the FDCA did not exist, Iowa couldn't have this statute because it wouldn't make any sense. Therefore, the state is trying to enforce the Food, Drug, and Cosmetic Act, which, as the Court has noted, 337A explicitly says that nobody can do that other than the federal government. Counsel, I have a hard time understanding how that squares with California v. Zook. Can you explain that? Sure, Your Honor. So, California v. Zook did not deal with the Food, Drug, and Cosmetic Act. It dealt with a federal statute that did not have a provision in it that said only the federal government can enforce this statute. It was an interstate commerce statute. It did not have, so that's what this really comes down to. This is a 337A case. You can talk forever about the TCA's preservation and preemption clauses, and the important part about Edina is Edina doesn't mention 337A anywhere because the tobacco companies in that case were not arguing that this was a violation of 337A. They were trying to argue that it was a violation of the TCA's preservation clause. You cannot read the preservation and preemption clauses as Congress intending to carve out from 337A anything to do with tobacco products. How about Zyla Life? You didn't address that in your briefs. Are you asking us to create a circuit split with the Fifth Circuit? Zyla?  There already is a circuit split. The defendant in Zyla has filed a cert petition at the Supreme Court, has noted that there is a circuit split with the Ninth Circuit that the Fifth Circuit didn't address, even though the district court below had relied on the Ninth Circuit case. The Supreme Court two days ago asked the Solicitor General to submit the federal government's view on that. Zyla is just wrong, I will tell you. Zyla deals with 337A in a footnote, and it says that, well, the only reason Congress had to do 337A was to make clear that the federal government could bring non-statutory causes of action. It doesn't make any sense. I'll tell you, I used to litigate for the FDA for several years. I wasn't aware that there were non-statutory causes of action that FDA could bring. But the original Food, Drug, and Cosmetic Act had specific causes of action that the federal government could bring, and those are the actions that are still in existence today. An injunction action, criminal prosecution, seizure actions would actually mention the U.S. Attorney's Office. And Section 336 says that the FDA, for minor violations, is not required to go to the Attorney General for prosecution. It can just issue a warning letter. All that was in the original TCA, or the original Food, Drug, and Cosmetic Act, and they're there today as well. So Congress didn't need to add 337A to tell everyone that only the federal government could enforce the act. And 337A, the codification was a different code section in the original FDCA, but that's been there since 1938. And I can't do the math in my head, but in the entire time since Congress passed the Food, Drug, and Cosmetic Act, there's been one time when Congress has pared back 337. That was in 1990. Congress amended 337, split it into two, 337A and 337B. 337B says that states can enforce certain of the misbranding provisions for food under the Food, Drug, and Cosmetic Act. But even there, the statute says that before the state does that, it needs to coordinate with the federal government so that the federal government knows what's going on and maybe the federal government can consult with the state and indicate maybe there's a reason we don't want to do this. So given that history and Congress being aware of that, it's not a reasonable interpretation of the TCA's preservation and preemption clauses to say that that just gives the states carte blanche to enforce the Food, Drug, and Cosmetic Act. Now, what does that savings clause in the TCA, what does that deal with? You need to go back and look at what was going on when Congress passed the TCA in 2009 and look at other provisions in the TCA. So there are several, so Section 387A-1 of the Food, Drug, and Cosmetic Act, it required Congress to, or it required FDA to adopt regulations about the sale of tobacco products that FDA had adopted in the 90s, but the Supreme Court struck down because the Supreme Court said you don't have the authority over tobacco at this point. And those included age restrictions. It included restrictions on where products could be sold. 387F, 21-387F, says that the FDA, while it has the authority to adopt regulations regarding tobacco products, it says those regulations can't prohibit certain categories of retailers from selling products, tobacco products. So that's sort of a compromise there. You know, Congress doesn't want the FDA saying, you know what, you can't sell cigarettes at convenience stores, gas stations, you can only sell them in tobacco shops. That same section of the statute at the time said that the FDA could not adopt a regulation that raised the minimum purchase age above 18. It also, in 21-387G, in the original TCA, said that Congress, or that the FDA can't pass a regulation that simply bans cigarettes or smokeless tobacco or cigars, and it cannot adopt a regulation that requires cigarettes to have their nicotine level all the way to zero. So Congress was putting certain restrictions on what the FDA could do in the administrative sphere in terms of tobacco products. But that savings clause allows states to go beyond that. So at the time, there were states that had minimum age purchase above 18. So states were free to do that. States could ban cigarettes. I don't know if any have. That preservation clause and savings clause applies also to localities. If states wanted to, like they did in Adena, they wanted to ban flavored products. So we're not reading that savings clause out of the statute. But what the state is trying to do is read 337A out of the statute. So why doesn't this fall within what appears to me to be a very broad savings clause? It's a savings clause, Your Honor, that at the end of the day, what it is doing, when read in conjunction with 337A, it is specifically saying that unless a product, it has gone through the premarket tobacco product application process or is in that process. So as Buckman tells us, a critical element of the state's case is that the Food, Drug, and Cosmetic Act requirement. Without that, that doesn't exist. So the savings clause, while this would render any intrusion on the federal government's regulation of tobacco products or any attempt by a state to enforce the FDCA, it would render, it would just basically say that the states can enforce any provision regarding tobacco products of the FDCA, so long as they style it as a sales restriction. And at the end of the day, anything is going to be, the states could get around it in any manner. And we give examples of that in our brief. There are several requirements. There's not just the PMTA, but there's registration requirements, there's user fee requirements, which are in the preemption clause of the TCA. The preemption clause of the TCA actually says states can adopt their own premarket tobacco product applications, premarket tobacco product application requirements, registration, the facility that manufactures the product has to register with the FDA, the facility that manufactures the product has to pay a user fee. So right now, what the state statute says is, look, if you want to sell these products in Iowa, you have to, the sellers have to submit a certification to the state saying, we have a, FDA has authorized the product through a PMTA, or we have filed a PMTA and it is under review. By the state's argument, the state could also say, well, you also have to certify that you have registered with the FDA. And if you haven't done that, then you can't sell the product. If you haven't paid your user fee, you have to certify that, and if you haven't done it, you have to, you can't sell the product. Those are things that the FDA enforces. If you don't register your facility with the FDA, your product is, it's either adulterated or misbranded, one or the other. And those are the two main things the FDA brings enforcement actions for, selling an adulterated product or a misbranded product. If you don't pay your user fee, I believe your product is misbranded under the FDCA's tobacco provisions, and the FDA can bring an enforcement action against you for that. I wanted to quickly touch on, and direct the court's attention, and it is in our briefing. We cited it twice. This court's opinion in Bryant v. Medtronic, which is 623 F3rd 1200, which is a medical device case in which it came under Minnesota state law, and the plaintiff in that case, their simple negligence claim said that the medical device manufacturer was negligent in that the manufacturer didn't submit adverse event reports to the FDA in accordance with FDA requirements. This is on page 1205 of the opinion. And this court said that that was preempted under 337A. The court said that these claims are simply an attempt by private parties to enforce the MDA, the medical device amendments to the FDCA. And those claims are foreclosed by section 337A as construed in Buckman. If you put the state statute right next to what's going on in this Medtronic case, the state statute basically says, look, if you don't submit the information that you're required to submit to the FDA, your pre-market tobacco product application, and you don't get approval, you are violating state law. That's exactly what the plaintiff was trying to do in the Medtronic case. You're saying, well, there's a duty of due care in Minnesota, and that should include providing adverse event reports to the FDA in accordance with the Food, Drug, and Cosmetic Act and FDA regulations. And this court said, well, that's just trying to enforce the FDCA. 337A and Buckman don't let you do that. And that Medtronic case is not dealing with a fraud on the FDA claim. That's just dealing with straight-up negligence claim. So this court has already decided that Buckman is not limited to fraud on the FDA claims. Real quickly, on the issue of standing, I think what Iowa is failing to address here is that we're talking about Article III standing, which is for cases and controversies. And the Supreme Court's recent discussion of what the injury requirement means, and this is in the FDA versus Alliance for Hippocratic Medicine, which is in our brief. It's the abortion pill case, 9-0 opinion by the Supreme Court. What the court explains there is the injury requirement is making sure that we don't have courts issuing advisory opinions or handling cases where the plaintiff is just a bystander to something that's going on. That's not what we have here. Our clients are not bystanders. They are trying to prevent the state government from enforcing a law that the state governments do not have the right to enforce. I see I'm out of time, so if there are no questions. Do you agree on standing the position in the Cato Institute amicus brief? I apologize, Your Honor, did the Cato Institute file an amicus brief in our case? Oh, I know there were a lot of them, but I thought they had a specific discussion of this. If you violate federal law, you know what, that's... Okay, I apologize, I'm not familiar with that. Thank you. Is there a problem? No? Yeah, a minute. Thank you, Your Honor. The FDCA is not a critical element to liability under Iowa's law. A product that is FDA authorized may still violate Iowa's law. It's not a critical element. The Bryant case is an NDA case. That's not a state sales regulation that was at issue there. Again, that was a general state tort claim, just like in Buckman. We're not limiting our argument against Buckman to just fraud on the FDA claims. We're saying general state tort claims used to police solely an FDCA violation are what the 337A does. 337A still has an application in the tobacco world in that if the law that is trying to be used, liability turns solely on the FDCA. I might finish with two points. No matter what the preemption standard is here, this court should vacate the injunction because plaintiffs sought a facial injunction. The district court at pages 22 and 23 of its opinion found that there were constitutional applications of the law. That should be the end of the facial injunction analysis. Lastly, we're here on a preliminary injunction. There's four factors to analyze. Three here because the state is the defendant, so two merge. The district court only analyzed one. This court has said in many cases that failure to consider a relevant factor is in and of itself an abuse of discretion. The district court abuses discretion at least as to that point. If you're going to issue an injunction, we ask you to narrow the injunctive relief. Like my friends on the other side in the 28J letter cited, the Virginia federal court case, we ask you to look at the remedy applied in that Virginia federal court case. The Virginia federal court, despite finding one part of that law preempted by applying 337A, still allowed Virginia to establish their vapor products directory, enforce it, and enforce every requirement that wasn't directly reliant on the FDCA. So if you're concerned at all about one part of our law as solely relying on the FDCA, we ask you to narrow the injunction in accordance with what the Virginia federal court did. Thank you, Your Honors. Thank you. The case is complex and important. Argument in the briefing, a thorough briefing, and helpful arguments. We'll take it under advisement.